# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, ) | | |
| as subrogee of Zeeshan Sumair, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | CASE NO. 10-cv-237 | |
| ) | | |
| PULTE HOMES OF ST. LOUIS, LLC ) | Judge Robert M. Dow, Jr. | |
| D/B/A CENTEX HOMES, ) | | |
| ) | | |
| Defendant. ) | | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Pulte Homes of St. Louis, LLC's motion for a more particular statement, or, in the alternative, to dismiss Plaintiff Allstate Insurance Company's complaint [13]. For the reasons set forth below, the Court grants Defendant's alternative motion to dismiss [13] and dismisses this case without prejudice for lack of subject matter jurisdiction.

**I.  Background**

Plaintiff Allstate Insurance Company ("Allstate") brought this subrogation action on behalf of its insured, Zeeshan Sumair ("Sumair"). Allstate's one-count complaint alleges that Defendant Pulte Homes of St. Louis, LLC ("Pulte") negligently constructed Sumair's home, resulting in water damage to the home and Sumair's personal property.

Allstate alleges that Sumair purchased a home from Pulte located at 327 Weymouth Avenue in Elgin, Illinois. Sumair's home was covered by a homeowner's insurance policy issued by Allstate. According to Allstate, sometime between January 18, 2009 and January 25, 2009, the Chicago area experienced extremely low temperatures causing the plumbing in the

Sumair's home to freeze and burst, which in turn caused flooding. Allstate alleges that Pulte failed to properly insulate or seal the plumbing in Sumair's home. The ensuing water damage affected the home's structure and contents, and the Sumair family was forced to vacate the home during its repair. Pursuant to its policy with Sumair, Allstate paid out $118,799.92 for the water loss.

In its complaint, Allstate alleges that Pulte Homes was negligent in failing to adequately perform, inspect, and supervise the installation of the water lines in the master bathroom. The complaint does not specify what property was damaged by the alleged flooding. Rather, Allstate joins all of its damages together in one lump-sum: "Allstate has suffered damages, including the cost of repair, restoration, and other expenses associated with the water loss at the Sumair home in an amount in excess of [$118,799.92]."

This action has been brought in federal court pursuant to diversity jurisdiction, as Allstate is an Illinois corporation and Pulte Homes is a Texas corporation and Allstate alleges that the amount in controversy totals $118,799.92. Pulte's motion questions whether the amount in controversy appropriately exceeds the bar set by Rule 12(b)(1) of the Federal Rules of Civil Procedure. Relying on the economic loss doctrine, Pulte first sought a breakdown of Allstate's damages to ascertain whether the personal property damages paid to Sumair by Allstate actually exceeded $75,000. In its response brief, Allstate conceded that the personal property damages did not exceed $75,000, but maintains that the full measure of its damages ($118,799.92) can be recovered under its negligence theory. Perhaps anticipating Allstate's response, Pulte also has moved to dismiss Allstate's complaint for lack of subject matter jurisdiction.

## II. Analysis

Because Allstate concedes that the alleged personal property damages do not exceed $75,000, a more definite statement is unnecessary. Rather, the Court proceeds to analyze Pulte's motion on the alternative basis – as a motion to dismiss for lack of subject matter jurisdiction. When ruling on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b), the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003); *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). Allstate asserts that the Court has jurisdiction based on diversity of citizenship. See 28 U.S.C. § 1332. In order for jurisdiction to be founded on diversity of citizenship, there generally must be complete diversity of citizenship – that is, no plaintiff can be a citizen of the same state as any defendant – and the amount in controversy must be at least $75,000. See *LM Ins. Corp. v. Spaulding Enters. Inc.*, 533 F.3d 542, 546 n.1 (7th Cir. 2008) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)).

Pulte contends that the economic loss rule embodied in *Moorman Mfg. Co. v. National Tank Co.,* 435 N.E.2d 443 (Ill. 1982), precludes Allstate's recovery for the full amount of damages alleged. The *Moorman* doctrine prevents a plaintiff from recovering in tort for purely economic losses. See *Moorman,* 435 N.E.2d at 450; see also *In re Chicago Flood Litigation,* 680 N.E.2d 265, 274 (Ill. 1997). In applying this doctrine, the Illinois Supreme Court has held that "a disgruntled purchaser of a certain house cannot assert that, due to inferior workmanship that led to eventual deterioration, he can recover under a negligence theory in tort." *Redarowicz v. Ohlendorf,* 441 N.E.2d 324, 327 (1982); see also *Mars, Inc. v. Heritage Builders of Effingham, Inc.,* 763 N.E.2d 428, 434 (2002) (the *Moorman* Doctrine is founded on the premise that "parties

to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover damages caused by a breach of contract"). "The demarcation between tort recovery for physical harm and a contract recovery for economic losses usually depends on (1) the nature of the defect and (2) the manner in which the damage occurred." *Board of Educ. of City of Chicago v. A, C & S, Inc.,* 645 N.E.2d 580, 586 (Ill. 1989) (citing *Moorman,* 435 N.E.2d at 450); see also *Metropolitan Property and Cas. Ins. Co. v. James McHugh Const. Co.*, 1999 WL 971283, at *2 (N.D. Ill. Oct. 21, 1999).

In *In re Chicago Flood Litigation,* the Illinois Supreme Court held that suit in tort will not be barred by the economic loss doctrine in the following circumstances: (1) where the plaintiff sustained damage, such as personal injury or property damage, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages were proximately caused by a defendant's intentional, false representation; and (3) where the plaintiff's damages were proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions. 680 N.E.2d 265, 274 (Ill. 1997). Allstate maintains that the first exception for property damage resulting from a sudden or dangerous occurrence applies here.

In determining whether the sudden and dangerous occurrence exception to the economic loss rule applies, a court considers (1) whether the event at issue constituted a sudden and dangerous occurrence; and (2) whether the damage sustained constituted "property damage." See *Mars, Inc. v. Heritage Builders of Effingham, Inc.,* 763 N.E.2d 428, 434 (Ill. 2002) (describing the inquiry into the sudden and dangerous occurrence exception to economic loss rule as "necessarily bipartite"); see also *ExxonMobil Oil Corp. v. Amex Const. Co., Inc.*, 702 F.Supp.2d 942, 967 (N.D. Ill. Mar. 19, 2010). A sudden and dangerous occurrence has

somewhat circularly been defined as an occurrence that is "highly dangerous and presents the likelihood of personal injury or injury to other property." *Id.* (internal citation omitted). "[The *Moorman*] court had in mind fires, explosions, or other calamitous occurrences due to the product and the resulting risk of harm to persons or property." *Loman v. Freeman,* 890 N.E.2d 446, 452 (Ill. 2008).

"When characterizing an event as sudden and calamitous the focus is upon the suddenness of the *occurrence of the event* * * * rather than the suddenness or the length of time within which the *defect or cause of the occurrence* develops." *American Xyrofin, Inc. v. Allis-Chalmers Corp.,* 595 N.E.2d 650, 657 (1992). As a general matter, the bursting of the pipes resembles events that courts applying Illinois law have found to be "sudden, dangerous, or calamitous." See, *e.g., In re Chicago Flood.,* 680 N.E.2d at 275-76 (underground flood); *MCI Worldcom Network Servs., Inc. v. Big John's Sewer Contractors, Inc.,* 2003 WL 22532804, at *3 (N.D. Ill. Nov. 7, 2003) (excavation in violation of statutes); *Mars,* 763 N.E.2d at 436 (thunderstorm); *Federal Ins. Co. v. Village of Westmont,* 271 Ill.App.3d 892, 895 (1995) ("In the case at bar, the damages are the result of a water meter that failed, causing extensive flooding in the basement of a building under construction. We find these damages are properly categorized as noneconomic damages."); *Elecs. Group. Inc. v. Cent. Roofing Co.,* 518 N.E.2d 369, 371 (1987) (significant water leaking through roof in single day); *United Air Lines, Inc. v. CEI Indus. of Illinois, Inc.,* 499 N.E.2d 558, 562 (1986) (even though collapse of roof was caused by water leaks accumulating over time, the collapse of the roof was a sudden and dangerous occurrence). Accordingly, the Court finds that Allstate's allegations concerning the bursting of the pipes sufficiently plead a sudden and dangerous occurrence – and Pulte does not argue to the contrary.

5

Although Pulte apparently concedes that the bursting of the pipes constitutes a sudden and dangerous occurrence (at least at the pleading stage), Pulte argues that the facts alleged do not satisfy the second requirement of personal injury or property damage. See *In re Chicago Flood,* 680 N.E.2d at 275 (noting that a sudden and dangerous event, "by itself, does not constitute an exception to the economic loss rule. Rather, the exception is composed of a sudden, dangerous, or calamitous event *coupled* with personal injury or property damage."). Mere damage to any property is not sufficient; instead, the property must be "other property," extrinsic from the product itself. See *Mars,* 763 N.E.2d at 436. Pulte contends that Allstate has failed to properly plead damage to "other property."

Contrary to Pulte's position, Allstate had adequately pled damage to "other property." The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). Although Allstate has not specifically listed each item of Sumair's personal property that was damaged by the water, the complaint satisfies Federal Rule of Civil Procedure 8(a).[1] Here, both Allstate's complaint as well as its response brief demonstrate that Allstate seeks to recover for

---

[1] A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (FED. R. CIV. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. E.*E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, * * * 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555).

damage to personal property.[2]  See Rule 8 does not require Allstate to list all of the items damaged; it is enough, for present purposes, that Allstate has asserted damage to personal property and has conceded that the damage to personal property does not exceed $75,000.

But this does not end the inquiry.  Pulte contends that even if Allstate has met the two elements of the sudden and dangerous occurrence exception to the economic loss rule, Allstate may not recover both economic and non-economic losses.  Because Allstate has conceded that its non-economic losses are less than $75,000, Pulte argues that Allstate has failed to meet the amount in controversy requirement and the case must be dismissed for lack of subject matter jurisdiction.  Allstate counters that when the sudden and dangerous event exception applies, a plaintiff may recover both economic losses and non-economic losses.  Thus, the question before the Court is whether a plaintiff who sufficiently pleads an exception to the *Moorman* doctrine may recover economic losses in addition to the non-economic losses.

The Illinois Supreme Court has described economic losses as "damages for inadequate value, costs of repair and replacement of defective product, or consequent loss of profits – without any claim of personal injury or damage to other property * * * as well as the diminution in value of the product because it is inferior in quality and does not work for the general purpose for which it was manufactured and sold."  *Moorman*, 435 N.E.2d at 449.  There is no disagreement among the parties that Allstate seeks damages beyond personal property damages, and that those economic losses allow Allstate to meet, and exceed, the $75,000 threshold.  However, Allstate claims that once the sudden and calamitous event exception applies, that "means that a case must be removed fully from the application of the economic loss doctrine and

---

[2]  As a general rule, a plaintiff may assert additional facts in its response to a motion to dismiss, so long as the new allegations are consistent with original pleading.  See *Brokaw v. Mercer County*, 235 F.3d 1000, 1006 (7th Cir. 2000); *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

7

allowed to proceed in tort as pled." Pl. Resp. at 4. As pointed out by Pulte, Allstate's interpretation does not align with Illinois law (or federal cases applying Illinois law).

In *Trans States Airlines v. Pratt & Whitney Canada, Inc.,* the Illinois Supreme Court held that the economic loss rule, which barred recovery for a faulty airplane engine, likewise barred the plaintiff from recovering damages for the airframe in which it was housed. 682 N.E.2d 45, 59 (1997). According to the court, "damage to the airframe caused by the defective engine constitute[d] damage to a single product," not damage to "other property." *Id.* at 51. The court rested its decision on the fact that the parties had bargained for an entire aircraft, which included the engine and the airframe, and concluded that "[g]iven the forseeable consequences that a defective engine would result in damage to the airframe, * * * parties to the sublease agreement could have bargained in consideration of such risks." *Id.* *Trans States* did not change the general rule that a plaintiff may recover in tort for personal injury or property damage; rather, it simply clarified and reaffirmed the rule articulated in numerous cases that a plaintiff may not recover in tort for damage to the faulty product itself.

In *Muirfield Village-Vernon Hills, LLC v. K. Reinke, Jr. & Co.*, the Illinois Appellate Court further refined the law on recoverable damages under the sudden and dangerous event exception. The *Muirfield* court affirmed the dismissal of a portion of a contribution complaint which sought recovery for economic losses but reversed the trial court's dismissal of the portion of the complaint which sought contribution for non-economic losses. 810 N.E.2d 235, 249 (Ill. App. Ct. 2d Dist. 2004). The court allowed the plaintiffs, who had alleged the sudden and dangerous event exception, to proceed on their non-economic loss claims but determined that the claim for damages to the home itself was barred by the economic loss rule. The court explained:

> [H]ere, plaintiffs cannot recover contribution for damages accruing from the loss of the Strains' house, as that is a classic economic loss. See *Redarowicz,* 92 Ill.2d

8

> at 178, 65 Ill.Dec. 411, 441 N.E.2d 324. However, plaintiffs can recover contribution for the losses to the Strains' personal property. Therefore, the trial court correctly dismissed that portion of the third amended complaint seeking contribution based on the loss of the house, but should not have dismissed that part of plaintiffs' claim seeking contribution based on the personal property damages incurred by the Strains.

*Id.* at 249. The *Muirfield* court clearly held that properly pleading the sudden and calamitous event exception to the economic loss rule only allows a plaintiff to pursue non-economic damages. See *id*.

Federal courts in this district have reached the same conclusion. In *Colovos v. Owens-Corning Fiberglass Corp.,* the court discussed the "other property" exception and concluded that damages to the contents of the plaintiff's building would fall under the "other property" exception to the "economic loss" rule, but that damage to the building itself (the roof, floor, and interior) was an economic loss, recovery for which was barred by Moorman. 1994 WL 201047, at *2-3 (N.D. Ill. May 18, 1994). The court thus dismissed the plaintiffs' tort claims for damage to the roof, interior, and floor of the building, but sustained the damage claim with respect to personal property inside the building, assuming that the plaintiffs could demonstrate that they suffered a "significant" amount of damage to the contents. Similarly, in *Metropolitan Property and Cas. Ins. Co. v. James McHugh Const. Co.*, the court aptly explained that "[a]lthough the court concludes that the economic loss rule does not bar plaintiff's claims entirely, the court emphasizes that plaintiff may recover in tort for * * * personal belongings only, and may not recover for any damage done to the rest of his home." 1999 WL 971283, at *2 (N.D. Ill. Oct. 21, 1999).

Applying the rational set forth in the preceding cases, the Court concludes that the economic loss rule prevents Allstate from recovering for damage to the house (of which the pipes were a component part) because the damage does not fall within the "other property"

9

exception. See, *e.g.*, *Muirfield*, 810 N.E.2d at 249; *Metropolitan Property*, 1999 WL 971283 at *2; *Colovos,* 1994 WL 201047 at *3. As previously noted, the *Moorman* doctrine does not prevent Allstate from recovering for "other property" damage. But because Allstate has conceded that the damage to personal property amounts to less than $75,000, the amount in controversy requirement is not met and the Court does not have subject matter jurisdiction over the lawsuit.

### III. Conclusion

For these reasons, the Court grants Defendant's alternative motion to dismiss [13] and dismisses this case without prejudice.[3]

Dated: November 1, 2010
_____
Robert M. Dow, Jr.
United States District Judge

---

[3] Illinois law permits a plaintiff to "commence a new action within one year or within the remaining period of limitation, whichever is greater," after an action "is dismissed by a United States District Court for lack of jurisdiction." 735 ILCS 5/13-217.